## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| IN RE: ABILIFY (ARIPIPRAZOLE) PRODUCTS LIABILITY LITIGATION | Case No. 3:16md2734 |
| This Document Relates to the Cases Listed on Pages 22-24 of this Order | Judge M. Casey Rodgers Magistrate Judge Gary Jones |

## ORDER

This matter is before the Court on Plaintiffs' Omnibus Motion to Remand Cases to California State Courts. *See* ECF No. 998. The Court heard oral argument on the motion on October 26, 2018. After thorough consideration and for the reasons discussed below, Plaintiffs' motion is granted.[1]

## I.    Background

The instant cases are part of a multidistrict litigation consolidating over 2,000 cases involving the prescription drug Aripiprazole, more commonly known as Abilify. Between April and August 2018, Plaintiffs filed 21 complaints in California Superior Courts ("California cases").[2] *See* ECF No. 1008. The complaints assert

---

[1] Defendants' Motion for Leave to Submit Supplemental Opposition to Plaintiffs' Omnibus Motion to Remand Cases to California State Courts, ECF No. 1036, is also granted.

[2] Initially, a number of the complaints named both residents and non-residents of California as plaintiffs. By stipulation of the parties, the non-resident plaintiffs were recently dismissed from the California cases for lack of personal jurisdiction. *See* ECF No. 1008. The non-resident plaintiffs were granted 60 days within which to refile their claims directly in the MDL. *See id.*

claims for: (1) strict liability; (2) breach of express warranty; (3) breach of implied warranty; (4) negligence; (5) negligent misrepresentation; (6) violations of the California Business and Professions Code; (7) violations of the California Consumer Legal Remedies Act; (8) fraudulent concealment; and (9) loss of consortium.  All of the complaints name four defendants: Bristol-Myers Squibb Company ("BMS"), McKesson Corporation ("McKesson"), Otsuka America Pharmaceutical, Inc. ("OAPI"), and Otsuka Pharmaceutical Co. ("OPC") (collectively "Defendants").[3] BMS is a Delaware corporation, with its principal place of business in New York. McKesson is a Delaware corporation, with its principal place of business in California.  OAPI is a Delaware corporation, with its principal place of business in New Jersey.  OPC is a Japanese company, with its principal place of business in Japan.

BMS removed all 21 complaints to federal court on the basis of diversity jurisdiction, claiming that the California defendant, McKesson, was fraudulently joined.  The complaints were subsequently transferred to this MDL.  After transfer, Plaintiffs filed the pending omnibus motion to remand the California cases to their originating California state courts.

---

[3] One of the California cases, *Andrew J. Behrman v. Bristol-Myers Squibb, et al.*, Case No. 3:18cv1465, also names three additional corporate defendants and two individual defendants.  *See id.*, ECF No. 1.  It is not apparent whether these five defendants have ever been served with the Complaint.  In any event, the parties do not address the citizenship of these defendants, so the Court does not consider them in ruling on Plaintiffs' omnibus motion to remand.

## II.    Legal Standard

A civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court.  28 U.S.C. § 1441(a).  If it is later determined that the federal court lacks jurisdiction, however, the case must be remanded.  *See Martin v. Franklin Capital Corp*., 546 U.S. 132, 134 (2005).  The removing party bears the burden of proving that federal jurisdiction exists, and that removal was proper.  *Leonard v. Enter. Rent-a-Car*, 279 F.3d 967, 972 (11th Cir. 2001).  Because removal jurisdiction raises significant federalism concerns, federal courts must construe removal statutes strictly and resolve all doubts about jurisdiction in favor of remand to state court.  *Univ. of S. Ala. v. Am. Tobacco Co*., 168 F.3d 405, 411 (11th Cir. 1999).

Under 28 U.S.C. 1332(a), federal courts may exercise original jurisdiction over civil actions in which the amount in controversy exceeds $75,000 and the action is between citizens of different states.  Diversity jurisdiction requires complete diversity of citizenship; that is, every plaintiff must be diverse from every defendant. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978).  The presence of a single properly joined, non-diverse defendant destroys complete diversity, and thus, diversity jurisdiction.  *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998).

As a general proposition, a plaintiff, as "master of the complaint," is free to structure his case in a manner that falls short of the requirements for diversity jurisdiction, including by properly joining a diversity-destroying defendant. *See Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013). However, such a case may nonetheless be removable where, as is claimed here, the plaintiff's joinder of a non-diverse defendant was fraudulent. *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *See Triggs*, 154 F.3d at 1287. The doctrine allows a district court to disregard the citizenship of a fraudulently joined party when assessing the propriety of removal premised on a diversity jurisdiction. *See Williams v. CNH Am., LLC*, 542 F. Supp. 2d 1261, 1264 (M.D. Ala. 2008).

As an MDL court sitting in the Eleventh Circuit, this Court applies the Eleventh Circuit's fraudulent joinder standard. *See Flores v. Ethicon, Inc.*, 2018 WL 31304421, at *3 (S.D. W. Va. June 25, 2018); *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 241 F.R.D. 435, 439 (S.D.N.Y. 2007); *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 2002 WL 34418423, at *1 (W.D. Wash. Nov. 27, 2002); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, 220 F. Supp. 2d 414, 423-24 (E.D. Pa. 2002) (citing *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1174 (D.C. Cir. 1987)); *In*

*re Bridgestone/Firestone Inc. Prod. Liab. Litig*., 204 F. Supp. 2d 1149, 1152 n.2 (S.D. Ind. 2002). The Eleventh Circuit has identified three circumstances in which the joinder of a non-diverse defendant may be deemed fraudulent: (1) where there is no possibility that the plaintiff can establish a cause of action against the non-diverse defendant; (2) where there is outright fraud in the plaintiff's pleading of jurisdictional facts; and (3) where a "diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several or alternative liability" and "the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant." *See Triggs*, 154 F.3d at 1287. Only the first species of fraudulent joinder is at issue in this case.

The removing party bears the "heavy" burden of demonstrating fraudulent joinder, *see Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997), with clear and convincing evidence, *see Stillwell v. Allstate Ins. Co*., 663 F.3d 1329, 1332 (11th Cir. 2011). The fraudulent joinder determination must be based on the plaintiff's pleadings at the time of removal, which may be supplemented by affidavits and deposition transcripts. *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). All factual allegations must be viewed in the light most favorable to the plaintiff and any uncertainties in state law must be resolved in the plaintiff's favor. *Id*. In conducting a fraudulent joinder inquiry, a court may not weigh the merits of a plaintiff's claim beyond determining whether it is at least arguable under state law.

*Id.* "If there is even a possibility that a state court would find that the complaint states a cause of action against [the non-diverse defendant], the federal court must find that joinder was proper and remand the case to state court," regardless of the plaintiff's motives for joining the non-diverse defendant. *Crowe*, 113 F.3d at 1538.

## III.    Discussion

Plaintiffs argue that the California cases must be remanded because they have alleged state law claims against McKesson, a properly joined, non-diverse defendant whose presence destroys diversity jurisdiction.  Defendants argue that McKesson was fraudulently joined because: (1) there is no possibility that Plaintiffs can establish any claim against McKesson under California law; and (2) Plaintiffs do not intend, in good faith, to pursue a judgment against McKesson.  The Court addresses these arguments in turn.

### A.    Adequacy of the Complaints

Plaintiffs allege a number of state law claims against all of the defendants, including McKesson, only one of which must be potentially viable to support remand.  All of the California cases premise at least one claim on a theory of strict liability for failure to warn.  To determine whether it is possible that a California court would find that Plaintiffs have stated a cause of action against McKesson, the Court must look to the pleading standards applicable in California state court.  *See Stillwell*, 663 F.3d at 1334.  Under California law, a complaint must contain "[a]

statement of the facts constituting the cause of action, in ordinary and concise language."  Cal. Civ. Proc. § 425.10(a)(1).  This rule requires "only general allegations of ultimate fact" and a plaintiff need not plead evidentiary facts in support of the general allegations.  *McKell v. Washington Mut., Inc*., 49 Cal. Rptr. 3d 227, 238 (2006).  "A pleading is adequate so long as it apprises the defendant of the factual basis for the plaintiff's claim."  *Id*.

To state a strict liability claim for failure to warn under California law, a plaintiff must allege that:

> (1) the defendant manufactured, distributed, or sold the product; (2) the product had potential risks that were known or knowable at the time of manufacture or distribution, or sale; (3) that the potential risks presented a substantial danger to users of the product; (4) that ordinary consumers would not have recognized the potential risks; (5) that the defendant failed to adequately warn of the potential risks; (6) that the plaintiff was harmed while using the product in a reasonably foreseeable way; [and] (7) that the lack of sufficient warnings was a substantial factor in causing the plaintiff's harm.

*Rosa v. City of Seaside*, 675 F. Supp. 2d 1006, 1011-12 (N.D. Cal. 2009), *aff'd sub nom. Rosa v. Taser Int'l, Inc*., 684 F.3d 941 (9th Cir. 2012).  In this case, Plaintiffs allege that McKesson was involved with the marketing, sale, and distribution of Abilify in California at a time when the company knew or should have known that the drug presented serious potential risks of harmful compulsive behaviors, such as compulsive gambling.  Plaintiffs further allege that McKesson (as well as the other defendants) failed to adequately warn consumers of these risks and, as "direct and

proximate" result of using Abilify as prescribed, Plaintiffs suffered various injuries. The Court finds that these general factual allegations adequately apprise McKesson of the factual basis for Plaintiffs' claims and, therefore, state a potentially viable cause of action against McKesson under California pleading standards.

The fact that Plaintiffs pled certain facts "[u]pon information and belief" or "[u]pon investigation and belief" does not compel a contrary conclusion.[4] California law permits such pleading where the factual basis for the allegation is within the knowledge or possession of the defendant, and the plaintiff has information leading him to believe the allegation is true. *See Doe v. City of Los Angeles*, 42 Cal. 4th 531, 570 (2007); *Pridonoff v. Balokovich*, 36 Cal. 2d 788, 792 (1951).  In this case, Plaintiffs alleged "upon investigation and belief" that, *inter alia*, McKesson distributed Abilify in California and, more specifically, distributed the Abilify that caused their injuries.[5]  The limited record currently before the Court reflects that McKesson was, in fact, involved in the marketing, sale, and distribution of Abilify. *See* Young Dep, ECF No. 1010-2 at 4; Bitetti Dep., ECF No. 1010-3 at 3.[6]  Because the records of exactly where and to whom McKesson distributed Abilify are

---

[4] *See, e.g., Breeze v. Bristol-Myers Squibb Co. et al.*, 3:18cv1327, ECF No. 1-1 at 8.

[5] *See id.*

[6] "Young Dep." refers to the portion of the official transcript of Teresa Young's deposition testimony on February 22, 2018.  *See* ECF No. 1010-2.  "Bitetti Dep." refers to the official transcript of Teresa M. Bitetti's deposition testimony on February 20, 2018.  *See* ECF No. 1010-3.

particularly within McKesson's control, pleading these facts on the basis of investigation and belief was sufficient, in light of the information known to Plaintiffs when the California cases were filed.

Defendants argue that Plaintiffs' claims against McKesson are inadequate because they fail to make specific allegations against the company and, instead, rely solely on generalized statements about "all Defendants." Def. Opposition, ECF No. 1010 at 28. This is incorrect. Unlike in the cases Defendants cite in support of their position, where courts found that "generic allegations as to all of the defendants" compelled a finding of fraudulent joinder, here, Plaintiffs have specifically alleged that McKesson, in particular, was "responsible for the product that caused [their] injuries." *See In re Pradaxa (Dabigatran Etexilate) Prod. Liab. Litig.*, 2013 WL 656822, at *5 (S.D. Ill. Feb. 22, 2013).[7] The record contains no evidence to the contrary.[8] Therefore, this specific allegation is sufficient to establish a causal

---

[7] *Compare In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices and Prod. Liab. Litig.*, 779 F. Supp. 2d 846, 850 (S.D. Ill. 2011) (finding that plaintiffs pled a viable cause of action against McKesson for strict product liability where they alleged that the company supplied the pills they ingested), *with Yasmin & Yaz*, 2010 WL 1963202, at *4 (S.D. Ill. May 14, 2010) (finding fraudulent joinder where plaintiff failed to allege that McKesson supplied the pills that allegedly caused her injuries), *and Salisbury v. Purdue Pharma, L.P.,* 166 F. Supp. 2d 546, 552 (E.D. Ky. 2001) ("Plaintiffs' complaint fails to connect the defendant pharmacies with plaintiffs' acquisition of Oxycontin. Absent [an allegation that the pharmacies sold or otherwise provided Oxycontin to plaintiffs, they] cannot establish proximate cause and their claim against the pharmacies fails as a matter of law.").

[8] *Cf. Martinez v. McKesson Corp.*, 2016 WL 5930271, at *3 (S.D. Cal. Apr. 7, 2016) (plaintiff's allegation that McKesson, a non-diverse defendant, supplied the drug she used was insufficient to overcome the uncontroverted record evidence that McKesson did not distribute the drug to plaintiff's doctors).

connection between McKesson, in its role as distributor, and Plaintiffs' injuries, which satisfies California pleading standards for strict liability failure to warn claims.

Defendants' next argument with respect to the adequacy of Plaintiffs' claims is that they fail because a distributor of prescription drugs, like McKesson, cannot be held strictly liable for damages in a products liability action under California law. This precise issue has received extensive treatment by federal district courts, with the overwhelming weight of authority finding that current California law does not shield pharmaceutical distributors from strict liability.[9] *See Rivera v. AstraZeneca Pharms. LP*, 2012 WL 2031348, *4 (C.D. Cal. June 5, 2012) (collecting cases and finding that it was not obvious the plaintiff's claims against McKesson would fail). The general rule under California law is that "all participants in the chain of distribution," including distributors, are strictly liable for injuries caused by a

---

[9] Defendants have only cited, and the Court has only found, one case in which a district court found that a distributor of prescription drugs is not subject to strict liability under California law. *See Skinner v. Warner-Lambert Co.*, 2003 WL 25598915, at *1 (C.D. Cal. 2003). The court in *Skinner* concluded, without analysis, that Comment K of the Restatement (Second) of Torts § 402A foreclosed any possibility that the plaintiffs could state a claim against McKesson for distributing FDA-approved drugs to pharmacists in California. However, as explained by the numerous courts that have declined to follow *Skinner*, Comment K also states that a seller of pharmaceuticals is not strictly liable *if* the product is "properly prepared and marketed, and proper warning is given." *See, e.g.*, *J.E. v. Smithkline Beecham Corp.*, 2014 WL 11369807, at *3 (N.D. Cal. Jan. 27, 2014); *J.K.B. by Bennett v. Pfizer, Inc.*, 2013 WL 12129385, at *5 (C.D. Cal. Nov. 4, 2013); *Hatherley v. Pfizer, Inc.*, 2013 WL 3354458, at *3 (E.D. Cal. July 13, 2013). In this case, Plaintiffs allege that proper warnings were not given; therefore, the Court rejects any suggestion that Comment K precludes strict liability for McKesson.

defective product. *See Bostick v. Flex Equip. Co., Inc*., 147 Cal. App. 4th 80, 88 (Cal. Ct. App. 2007). In the prescription drug context, however, the California Supreme Court has recognized an exception for retail pharmacies and pharmacists who, in filling prescriptions, essentially perform a health care service, rather than sell a good. *Murphy v. E.R. Squibb & Sons, Inc*., 40 Cal. 3d 672, 680-81 (1985). To date, no California court has extended this exception to distributors in the commercial chain for prescription drugs or otherwise limited the scope of a pharmaceutical distributor's products liability. *See Dodich v. Pfizer Inc*., 2018 WL 3584484, at *3 (N.D. Cal. July 26, 2018); *Andrews v. Bayer Corp*., 2010 WL 234808, at *3 (C.D. Cal. Jan. 12, 2010) (stating that "no California court has ever held that distributors of pharmaceuticals are exempt from the general rule of strict liability for failure to warn"). That said, many federal district courts, in similar litigation where various defendants claimed McKesson was fraudulently joined, have found the question of whether the company can be strictly liable for injuries caused by a defective pharmaceutical to be unsettled in California. *See Grove v. Bayer Corp*., 2010 WL 11595821, at *2 (C.D. Cal. Feb. 23, 2010) (collecting cases). Given this legal landscape, and the requirement that ambiguity or doubt about substantive state law be resolved in favor of remand, *see Pacheco*, 139 F.3d at 1380, the Court cannot say there is no possibility that a cause of action for strict liability against a prescription drug distributor, like McKesson, is viable under California

law.  *See Little v. Purdue Pharma, L.P.*, 227 F. Supp. 2d 838, 849 (S.D. Ohio 2002) (stating that "a federal court should hesitate before pronouncing a state claim frivolous, unreasonable, and not even colorable in an area yet untouched by the state courts").  Thus, the Court finds Defendants have not met their "heavy burden" of demonstrating that McKesson was fraudulently joined on this basis.

Defendants' final argument is that Plaintiffs have no viable state law claims against McKesson because their claims are preempted by federal law pursuant to *Mut. Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472 (2013), *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011), and *Wyeth v. Levine*, 555 U.S. 555 (2009).  In each of these cases, a drug manufacturer argued that it was impossible to comply with state law requirements to give different or greater warnings regarding the risks of a particular drug than the warnings approved by the FDA, without running afoul of federal drug regulations.  The Supreme Court in *PLIVA* agreed and held that state law failure to warn claims were preempted by the Federal Food, Drug and Cosmetic Act ("FDCA") because it was impossible for the manufacturers of a generic drug "to comply with both the state law duty to label their products in a way that rendered them reasonably safe and the federal law" requirement that generic drug manufacturers "always" use the same warning label as the brand-name counterpart. *PLIVA*, 564 U.S. at 613.  Similarly, in *Bartlett*, the Court held that state design defect claims were preempted because the state law imposed affirmative duties on generic

drug manufacturers that conflicted with their federal law duty not to change the chemical composition of a generic drug or the content of its warning labels. *Bartlett*, 570 U.S. at 484-85. In contrast, the Supreme Court in *Wyeth* held that a state law failure to warn claim against a brand name drug manufacturer is not preempted by federal law because, unlike a generic manufacturer, a brand name manufacturer may "unilaterally strengthen its warning." *Wyeth*, 555 U.S. at 573. In other words, a brand name drug manufacturer can simultaneously comply with both state and federal law. *Id.*

In this case, Defendants argue that these Supreme Court holdings regarding so-called "impossibility preemption" should be extended to distributors of brand name pharmaceuticals, like McKesson, who, like generic drug manufacturers, have no authority "to initiate a design, manufacturing, or label change" for the brand name drugs they distribute. *See* Def. Opposition, ECF No. 1010 at 36. This argument is not without conceptual and, frankly, practical appeal. After all, Plaintiffs are seeking to recover primarily on the basis of a deficient warning label that McKesson, as a mere distributor, had no authority to change. At least one district court has applied the Supreme Court's reasoning in *PLIVA* to find, on a motion to dismiss, that the plaintiffs' state law failure to warn claims against a distributor of a brand name drug were preempted by the FDCA in factual circumstances virtually identical to those presented here. *In re Fosamax (Alendronate Sodium) Prod. Liab. Litig. (No. II)*,

2012 WL 181411 (D.N.J. 2012); *see also In re Darvocet, Darvon, & Propoxyphene Prod. Liab. Litig.*, 756 F.3d 917 (6th Cir. 2014) (failure to warn claim against manufacturer preempted where the company no longer held the brand name drug's NDA and, thus, no longer had the power to make labeling changes).    If the preemption issue were properly before the Court for a determination on the merits, these authorities might well be considered persuasive.

However, Defendants overlook a critical aspect of the preemption analysis. There are two broad categories of preemption—complete preemption and conflict preemption—and the difference between them controls the scope of this Court's inquiry into whether the California cases must be remanded.  Complete preemption is a judicially recognized, jurisdictional exception to the well-pleaded complaint rule that confers exclusive federal subject matter jurisdiction in areas where Congress demonstrably intended the scope of a federal law to be so broad as to entirely replace any competing state law claim with a federal cause of action.[10]  *See Ervast v. Flexible Prods. Co.*, 346 F.3d 1007, 1012 (11th Cir. 2003); *Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc.*, 182 F.3d 851, 854-55 (11th Cir. 1999).  In contrast,

---

[10] Complete preemption rarely applies; the Supreme Court has recognized complete preemption as to only three federal statutes: (1) § 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), codified at 29 U.S.C. 1132(a); § 301 of the Labor Management Relations Act, codified at 29 U.S.C. § 185; and §§ 85-86 of the National Bank Act, codified at 12 U.S.C. §§ 85-86.  *See Atwater v. Nat'l Football League Players Ass'n*, 626 F.3d 1170, 1176 n.7 (11th Cir. 2010).

conflict preemption, which stems from a conflict between federal and state law, is a substantive defense to a state law cause of action and, therefore, does not confer federal jurisdiction over a case or provide a basis for removal. *See id.*  Stated differently, conflict preemption allows a defendant to defeat a plaintiff's state law claim on the merits by asserting the supremacy of federal law as an affirmative defense. *See Cmty. State Bank v. Strong*, 651 F.3d 1241, 1260 n.16 (11th Cir. 2011). Importantly, in conflict preemption cases where a federal court otherwise lacks subject matter jurisdiction over the dispute, the case must be remanded and the preemption argument must be decided by the state court. *Kemp v. Int'l Bus. Mach. Corp.*, 109 F.3d 708, 714 (11th Cir. 1997).

In this case, there is no dispute that Defendants' impossibility preemption argument falls within the conflict preemption category.  Although this argument is framed within the context of fraudulent joinder, it nonetheless remains a substantive defense that goes to the merits of Plaintiffs' state law claims.  Generally, the right of removal depends solely on a plaintiff's claims for relief and not on anticipated defenses to those claims. *See Pacheco*, 139 F.3d at 1380.  While the Eleventh Circuit has "acknowledged that, under some circumstances, application of an affirmative defense can support a finding of fraudulent joinder" in a removed case, s*ee Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1298 n.3 (11th Cir. 2007) (citation omitted), the Court has not found, and Defendants have not cited to, any case in which the

Eleventh Circuit has recognized a conflict preemption defense as such a circumstance. To the contrary, the Eleventh Circuit has emphasized that conflict preemption "is a substantive issue that must be decided by a court with competent jurisdiction." *See Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1292 (11th Cir. 2005); *Ervast*, 346 F.3d at 1013 n.17.

Applying these principles here, the Court concludes that, without any independent grounds for federal jurisdiction over Plaintiffs' claims, it lacks subject matter jurisdiction to assess the merits of McKesson's potential conflict preemption defense. *See Kemp*, 109 F.3d at 713; *see also Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 337 (5th Cir. 1999) ("When the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably [conflict-preempted], the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption. It lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved."). Any conflict preemption arguments McKesson seeks to raise must be decided in state court, which means the issue cannot provide a basis for a finding that McKesson was fraudulently joined.[11] Accordingly, because Plaintiffs have adequately alleged potentially viable theories

---

[11] To the extent McKesson successfully moves in state court for dismissal of Plaintiffs' claims against it on preemption grounds, the cases may very well become removable thereafter. *See* 28 U.S.C. §§ 1446(b)(3), (c).

of liability against McKesson under California law, the Court finds Defendants have not established fraudulent joinder based on pleading deficiencies.

### B.   Intent to Pursue Claims Against McKesson

Defendants also argue that McKesson was fraudulently joined because Plaintiffs' counsels' actions during this litigation demonstrate they have no genuine intent to pursue any claims against the company. Federal courts have routinely dismissed non-diverse defendants and retained jurisdiction over cases in which "the plaintiff's collective litigation actions, viewed objectively, clearly demonstrate[d] a lack of good faith intention to pursue a claim to judgment against [the] non-diverse defendant." *See Faulk v. Husqvarna Outdoor Prod. N.A., Inc.*, 849 F. Supp. 2d 1327, 1330-31 (M.D. Ala. 2012). This species of fraudulent joinder must be balanced against a plaintiff's "absolute right" to pursue claims against any jointly liable defendant, "whatever the reason that makes him wish to assert the right." *See Triggs*, 154 F.3d at 1291 (quoting *Chicago, Rock Island & Pac. Ry. Co. v. Schwyhart*, 227 U.S. 184, 193 (1913)). Thus, in a fraudulent joinder analysis, "a plaintiff's motivation for joining a defendant is not important as long as the plaintiff has the intent to pursue a judgment against the defendant." *See id*.

In this case, the Court has already found that Plaintiffs have stated cognizable claims against McKesson in the California complaints. There is nothing overtly frivolous or fraudulent about these claims. Plaintiffs' Counsel Bryan F. Aylstock

definitively and unequivocally represented to the Court that the California plaintiffs have a serious, good-faith intent to pursue a judgment against McKesson. Mr. Aylstock's representation is supported by the uncontroverted evidence that Plaintiffs began naming McKesson as a defendant in California cases within two months after learning that the company was involved in the marketing and distribution of Abilify.[12] The fact that Plaintiffs have not sought discovery from McKesson since that time appears to be a manifestation of their intent to proceed against the company in California state court, rather than their lack of diligence in this MDL, at least when viewed in the light most favorable to them. Finally, although a plaintiff's motivations are not important to the fraudulent joinder analysis, the Court notes that Plaintiffs have offered persuasive explanations for their decision to bring certain claims against McKesson in California state court, while simultaneously proceeding with the bulk of the Abilify litigation in the federal MDL. On balance, while the Court recognizes that Plaintiffs' decision to file cases against McKesson almost 18 months into the MDL was driven, at least in part, by litigation strategy, the Court cannot conclude from the current record that Plaintiffs lack a good-faith intent to pursue these suits to judgment.

---

[12] Given the posture of this litigation, it seems doubtful that Plaintiffs only just learned of McKesson's involvement in early 2018. *See* Teresa Young Deposition Transcript, ECF No. 1010-2 at 4; Teresa Bitetti Deposition Transcript, ECF No. 1010-3 at 3. Nevertheless, as this fact is uncontroverted, and doubts must be resolved in Plaintiffs' favor, the Court accepts it as true.

Case 3:18-cv-02064-MCR-GRJ    Document 18    Filed 11/08/18    Page 19 of 25

Page 19 of 25

The facts and procedural posture of this case are materially distinguishable from the cases cited by Defendants, in which federal district courts have found a lack of intent to prosecute state law claims against a non-diverse defendant and dismissed the defendant as fraudulently joined.  In virtually all of those cases, the non-diverse defendant was a named party from the start of the litigation, along with at least one diverse defendant, yet the plaintiffs never followed through on their claims against it.[13]  For example, in *In re Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, the district court examined claims brought against McKesson, a non-diverse defendant, in a case that was part of an MDL where McKesson had also been named as a defendant in "numerous" other cases in both federal and state courts.  257 F. Supp. 3d 717, 721 (E.D. Pa. 2017).  The court considered the actions of the other MDL plaintiffs and was "aware of no instance" in which a plaintiff had propounded meaningful discovery on McKesson during the course of the litigation.  *Id*. at 720.  More significantly, "numerous" plaintiffs had "outright dismissed" McKesson from their cases.  *Id*. at 720-21.  This historical pattern of bringing suit against McKesson but failing to prosecute, coupled with non-specific allegations against the company,

---

[13] *See, e.g.*, *Faulk*, 849 F. Supp. 2d at 1330-31 (no good faith intent to prosecute where, less than one month before trial in state court, the non-diverse defendant had not been served and no claims were asserted against it in plaintiff's pretrial submissions); *Long v. Wyeth*, 2003 WL 25548421, at *2 (M.D. Fla. May 13, 20013) (no good faith intent to prosecute where no scientific evidence linked the non-diverse manufacturer's drug to the injury alleged in the MDL and no individual plaintiff made any effort to pursue a claim against the non-diverse manufacturer beyond naming it as a defendant).

led the court to rightfully conclude that the plaintiffs in *Zoloft* lacked a good faith intent to pursue their claims against McKesson.  *Id*. at 721.  Similarly, in *In re Avandia Mktg., Sales Practices and Prod. Liab. Litig*., the court examined the five-year history of an MDL involving Avandia-related injuries and found that while 12,537 plaintiffs brought claims against both McKesson, a non-diverse defendant, and GlaxoSmithKline, a diverse defendant, none of the plaintiffs had sought discovery from McKesson or otherwise pursued their claims against the company, even though general discovery was complete in all state and federal cases.  *See* 2014 WL 2011597, at *3 (E.D. Pa. May 15, 2014).  None of the plaintiffs explained their failure to do so.  *See id*.  The court in *Avandia* found the plaintiffs' consistent inaction with respect to McKesson (which, again, was a named defendant), evidenced a lack of genuine intent to proceed with claims against it.[14]

---

[14] Notably, the court in *Avandia* had previously remanded a number of state law cases against McKesson, after rejecting the defendants' fraudulent joinder claim and finding that the plaintiffs may have colorable claims against McKesson under California law.  *See Avandia*, 624 F. Supp. 2d 396 (E.D. Pa. 2009).  The court's more recent decision, as discussed in the body of this Order, was based on what happened during the intervening period, by which time some of the cases filed in the MDL had been pending for five years.

Here, unlike in *Zoloft* and *Avandia*, there is no pattern of individual plaintiffs bringing suit against McKesson and then failing to follow through with discovery. Instead, Defendants ask the Court to infer Plaintiffs' lack of good faith intent to pursue a claim against McKesson from the fact that Plaintiffs have not previously brought suit against McKesson in the MDL or any other state court. This is not the appropriate baseline against which to measure Plaintiffs' intent to pursue McKesson and it was not the basis for the courts' decisions in *Zoloft* and *Avandia*. A plaintiff's lack of good faith intent is measured by his record with respect to *named*, non-diverse defendants during the course of a lawsuit. *See Zoloft*, 257 F. Supp. 3d at 721; *Avandia*, 2014 WL 2011597, at *3. As McKesson was only named for the first time in the instant cases, there is no historical record from which the Court may infer that Plaintiffs intend to do anything other than what they have represented—that is, vigorously pursue their state law claims against McKesson to judgment. *See Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 F. App'x 888, 891-91 (11th Cir. 2011) (stating that "doubt with respect to the allegations concerning the resident defendants being false *as when the question depends upon the credibility of witnesses* or the weight of evidence will not render the joinder fraudulent"). In short, the *Zoloft* and *Avandia* cases do not compel a finding of fraudulent joinder here.

For the foregoing reasons, the Court finds Defendants have not satisfied their heavy burden of demonstrating that Plaintiffs fraudulently joined McKesson to

defeat diversity jurisdiction.  Because McKesson is a properly joined, non-diverse

defendant against whom potentially viable state law claims are alleged, its presence

destroys the complete diversity necessary to make removal jurisdiction proper under

28 U.S.C. §§ 1332(a) and 1441(a).  Remand is required.

Accordingly, it is **ORDERED**:

1.   Plaintiffs' Omnibus Motion to Remand Cases to California State Courts, ECF No. 998, is **GRANTED**.

2.   The California cases are **REMANDED** as follows:

   a.   *Albert Abraham, et al. v. Bristol-Myers Squibb Co., et al*., Case No. 3:18cv2063, is **REMANDED** to the Superior Court of California, County of San Francisco, where it was filed at Case No. CGC-18-568915.

   b.   *David Adams, et al. v. Bristol-Myers Squibb Co., et al*., Case No. 3:18cv2060, is **REMANDED** to the Superior Court of California, County of San Francisco, where it was filed at Case No. CGC-18-568851.

   c.   *Bernard Adeniran, et al. v. Bristol-Myers Squibb Co., et al*., Case No. 3:18cv1406, is **REMANDED** to the Superior Court of California, County of San Francisco, where it was filed at Case No. CGC-18-566226.

   d.   *Alma Alford, et al. v. Bristol-Myers Squibb Co., et al*., Case No. 3:18cv2066, is **REMANDED** to the Superior Court of California, County of San Francisco, where it was filed at Case No. CGC-18-568849.

   e.   *Andrew Behrman v. Bristol-Myers Squibb Co., et al.*, Case No. 3:18cv1465, is **REMANDED** to the Superior Court of California, County of Los Angeles, where it was filed at Case No. BC702274.

f.   *Patrick Booth, et al. v. Bristol-Myers Squibb Co., et al.*, Case No. 3:18cv2079, is **REMANDED** to the Superior Court of California, County of San Francisco, where it was filed at Case No. CGC-18-568990.

g.   *Nicholas Breeze, et al. v. Bristol-Myers Squibb Co., et al*., Case No. 3:18cv1327, is **REMANDED** to the Superior Court of California, County of San Francisco, where it was filed at Case No. CGC-18-566068.

h.   *Angel Corralejo, et al. v. Bristol-Myers Squibb Co., et al.*, Case No. 3:18cv2062, is **REMANDED** to the Superior Court of California, County of San Francisco, where it was filed at Case No. CGC-18-568917.

i.   *Kisha Crisp, et al. v. Bristol-Myers Squibb Co., et al*., Case No. 3:18cv2036, is **REMANDED** to the Superior Court of California, County of San Francisco, where it was filed at Case No. CGC-18-568685.

j.   *Mentoria Davis, et al. v. Bristol-Myers Squibb Co., et al*., Case No. 3:18cv1493, is **REMANDED** to the Superior Court of California, County of San Francisco, where it was filed at Case No. CGC-18-566166.

k.   *Dawne Earp, et al. v. Bristol-Myers Squibb Co., et al*., Case No. 3:18cv2064, is **REMANDED** to the Superior Court of California, County of San Francisco, where it was filed at Case No. CGC-18-568916.

l.   *Kimberly Evans, et al. v. Bristol-Myers Squibb Co., et al*., Case No. 3:18cv1495, is **REMANDED** to the Superior Court of California, County of Alameda, where it was filed at Case No. RG18902953.

m.   *Malisa Green, et al. v. Bristol-Myers Squibb Co., et al*., Case No. 3:18cv1494, is **REMANDED** to the Superior Court of California, County of Alameda, where it was filed at Case No. RG18902958.

n.    *Brian Mack, et al. v. Bristol-Myers Squibb Co., et al.*, Case No. 3:18cv2059, is **REMANDED** to the Superior Court of California, County of San Francisco, where it was filed at Case No. CGC-18-568822.

o.    *Troy Marabuto, et al. v. Bristol-Myers Squibb Co., et al.*, Case No. 3:18cv2065, is **REMANDED** to the Superior Court of California, County of San Francisco, where it was filed at Case No. CGC-18-568826.

p.    *Susan Novick, et al. v. Bristol-Myers Squibb Co., et al.*, Case No. 3:18cv2061, is **REMANDED** to the Superior Court of California, County of San Francisco, where it was filed at Case No. CGC-18-568926.

q.    *Anna Ortega, et al. v. Bristol-Myers Squibb Co., et al.*, Case No. 3:18cv2085, is **REMANDED** to the Superior Court of California, County of San Francisco, where it was filed at Case No. CGC-18-568797.

r.    *Richard Rollo, et al. v. Bristol-Myers Squibb Co., et al.*, Case No. 3:18cv1443, is **REMANDED** to the Superior Court of California, County of San Francisco, where it was filed at Case No. CGC-18-566146.

s.    *Stephanie Anne Stone, et al. v. Bristol-Myers Squibb Co., et al.*, Case No. 3:18cv2080, is **REMANDED** to the Superior Court of California, County of San Francisco, where it was filed at Case No. CGC-18-568981.

t.    *Joan Williams, et al. v. Bristol-Myers Squibb Co., et al.*, Case No. 3:18cv2086, is **REMANDED** to the Superior Court of California, County of San Francisco, where it was filed at Case No. CGC-18-568944.

u.    *Charlotte Wyle, et al. v. Bristol-Myers Squibb Co., et al.*, Case No. 3:18cv1438, is **REMANDED** to the Superior Court of California, County of Los Angeles, where it was filed at Case No. BC702288.

3.    The Clerk is directed to take all steps necessary to effectuate the remand of these cases and then close the files for all purposes.

4.    The Clerk is further directed to send a certified copy of this Order to the clerk of the Judicial Panel on Multidistrict Litigation.

**SO ORDERED** on this 8th day of November, 2018.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**